## RAILROADS—NEGLIGENCE.

[Lake Circuit Court, 1893.]

### LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY CO. v. CHARLES W. GODWIN.

**1. IRRELEVANT ABSTRACT PROPOSITION IMPROPER IN CHARGE.**

Instructions to the jury, in an action for personal injuries, respecting the duty and liability of the railroad company as to foreign cars, where no claim of negligence in that respect was made, would be in the nature of abstract propositions not demanded by the issues and though correct as abstract propositions, were properly refused.

**2. OPERATING TRAINS WITHOUT ACCIDENT FOR SEVERAL YEARS.**

The fact that fifty trains a day with their usual complement of men passed a standpipe for several years without injury will not relieve a railroad company from the charge of negligence, if, in fact, the standpipe was constructed so near the track as not to afford reasonable safety to employes in the performance of their duties; and it would be mis eading to charge the jury that such use and freedom from injury would constitute a reasonable test that the company might continue to use it without imputation ol negligence.

**3. MISLEADING CHARGE AS TO CONSTRUCTION BY ENGINEER.**

An instruction to the jury, in an action for injuries alleged to have been caused by the proximity of a standpipe to the railroad track, that the railroad company "had the right to commit the construction and location of its standpipes to its engineer or superintendent of construction; and this fact is not abridged by the fact that it might have been safer to its employes if the standpipe had been placed farther from the track; nor by the fact that the jury may differ with such engineer or superintendent as to the proper location of such pipes," might have been misleading, as leading the jury to believe that if the railway company so committed the construction of the standpipe, it would be relieved of all obligation thereto, and was properly refused.

**4. CHARGE ASSUMING FACT NOT ESTABLISHED, IMPROPER.**

A charge, in such case, that "if the jury should find from the evidence that brakemen were accustomed between stations to uescend the ladder of a car to examine whether boxes were heated, at places where no obstructions were in sight or to be expected, that fact would not justify the plaintiff in so exposing himself while passing stations, when he knew he was passing stations," assumes a fact, that a person would be in danger on the cars of the company in the discharge of his duties, and was properly refused.

**5. GENERAL RULE AS TO ASSUMPTION OF RISK APPLIES TO ALL.**

So far as the rule as to assumption of risk is concerned, the nature of the service is immaterial. The principle applicable alike to all, is that the master and the servant owe to each other the duty of exercising ordinary care in the discharge of their relative obligations to each other and the duties as measured by the character and the risks embraced in the service.

**6. SERVANT DOES NOT ASSUME UNUSUAL DANGERS.**

A railroad brakeman in entering the service of the railway company assumes only the ordinary and usual dangers of such employment, excluding all unusual or extraordinary risks growing out of any negligence on the part of the company. The fact that he may have knowledge, or in the exercise of ordinary care might know of the extraordinary or unusual dangers to which he may be subjected by the negligence of the master, and by the exercise of such care might protect himself from injury by reason thereof, is not sufficient to establish an assumption of such dangers as an incident of the employment.

**7. CAN ONLY BE DEFEATED BY HIS OWN NEGLIGENCE.**

A servant can only be defeated from recovering for injuries received in consequence of some unusual or extraordinary risks or dangers to which the master has subjected him, by his own negligence, contributing to his injury.

**8. Assumption of Risk, a Question of Law—Contributory Negligence, of Fact.**

The question of the risks assumed between master and servant is a question of law for the court, while the question of contributory negligence is a question of fact for the jury, to be decided by the jury under all the evidence bearing on the point.

**9. Knowledge of Danger does not always Defeat Recovery.**

Notwithstanding the rule in Coal and Car Co. v. Norman, 49 Ohio St. 598, that the servant complaining of an injury resulting from a defect of appliances or machinery, or even of the place of employment, must allege that the master knew of the defect or danger and that the servant did not, recovery may not be defeated simply by the fact that the servant knew of the danger. Where, if the servant knew of the defect or danger before the accident, there is good and sufficient reason at the time of the accident for his not remembering it, that is, the nature of his business was such that it would naturally and obviously take his mind therefrom, such as would induce ordinary men usually to forget, he cannot be held guilty of contributory negligence for forgetting, so as to defeat his recovery.

**10. Extraordinary or Unusual Danger.**

A standpipe placed in such close proximity to a railroad track that a brakeman on a running train would be injured by colliding with it while examining a hot box, is not one of the usual and ordinary dangers assumed by a brakeman in his contract of employment, the location and existence of which he is presumed to know, but it is one produced by the negligence of the company, for which recovery can only be defeated by the brakeman's contributory negligence.

**11. Knowledge to Defeat Recovery Must Extend to Dangers.**

The mere fact that the plaintiff knew the position of the standpipe in question, will not defeat his recovery in an action against the company for negligence. To have that effect it must appear that he knew of its dangerous proximity to the track.

**12. Non-Expert Testimony as to Personal Injury.**

In an action for personal injuries, a non-expert witness may testify that plaintiff "was not able to work at all," but testimony of such witness that "I did not consider him a well man, etc.," is not as to a fact but is in the nature of an opinion on the general result of his idea of the man and is improper.

**13. Non-Expert Testimony as to Condition of Injured Person.**

A non-expert medical witness may answer a question as to the condition of a person injured, as to the suffering and pain and as to strength and ability to work; and no objection can be made to the response: "He complained all the time of pain through his kidneys and looked pale; he did not look like a well man and did not move around like a man that had any energy all the time he worked for me," but a response, "I could not use him on inside work nor on blinds before he would faint right away and have to quit; what the cause of it was is something I don't know," goes beyond the proper line of such testimony.

**14. Answers Partly Competent and Partly Incompetent.**

Where the answer to a question was partly proper and partly improper, a motion to exclude the whole answer should be overruled. Thus, where a non-expert witness, in response to a question concerning the person injured, stated that "he looked pale when he tried to work; he tried to hoe a minute or two and quit" and that "he was sickly and complained a great deal," the latter might properly have been excluded, but the motion to exclude being to the whole answer, it was properly overruled.

**15. Change in Construction After Accident.**

The admission of evidence, that a defendant changed a dangerous appliance immediately after an accident is upon the principle of cause and effect; that, is, that knowledge of the accident having come to the defendant, that he knew from that fact that the place was dangerous; and that he had to remedy it and that he immediately did so; and as such, tends to prove an admission of its dangerous character.

*Railway Co. v Godwin.*

**16. Change Must be Within Reasonable Time.**

Evidence of a change in appliances, machinery or construction, claimed to be dangerous, made after an accident, to be competent as an admission of dangerous character, must relate to a period within a reasonable time after the accident. Thus where five years elapsed between the time of accident to a brakeman caused by colliding with a standpipe and the removal of such pipe farther away from the track, evidence of such removal, as tending to show its dangerous proximity to the track, is incompetent.

**17. Evidence of Relative Distances of Standpipes.**

Evidence of the relative distances of water pipes from the track of a railroad, the measurements of which were taken more than four years after the happening of an accident, alleged to have been caused by reason of a water pipe being too close to the track, is too remote to show negligence in placing the water pipe in question nearer than the others, unless evidence is offered to show that all had stood in their respective positions during all this period and were in precisely the same places as when the accident occurred, and especially where it appears that the railroad company had no plan laid out for the placing of such pipes, one of which, at least, was nearer than the one causing the injury.

**18. Question of Reasonable Time is for the Judge.**

The question as to what is a reasonable time, between an accident and a change in appliance, machinery or construction, as determining the competency of such evidence, is a question for the judge and must be determined before the jury will be entitled to consider such evidence.

**19. Rule as to Reversal as Against Evidence.**

The mere fact that a reviewing court would probably have found differently from the finding of the jury is not sufficient to justify a reversal as against the weight of the evidence.

Laubie, J.

The case of the Lake Shore and Michigan Southern Railway Company against Charles W. Godwin is a proceeding in error to reverse the judgment of the common pleas court of this county, and is a case brought by Godwin against the railway company to recover for injuries received by him at Painesville station, by coming in contact with a water pipe or standpipe, as it is called, adjacent to the track.

He was the brakeman upon the train, head brakeman, and on the occasion in question, having discovered a hot box, as it is called, upon one of the cars, he stepped down upon the ladder which was on the side of the car, and not upon the end, and while bending down and outward to look at the box to see its condition—whether it was necessary for the train to stop there in order to remedy the trouble—he was struck by the standpipe and knocked off and injured.

There was a judgment in favor of the plaintiff below, which is now sought to be reversed.

The case was presented to us in argument by counsel for the railroad company largely upon general principles, without discussing the particular questions involved, although some of them were referred to specifically, especially by the counsel closing the case, and the claim was made that none of the exceptions contained in the record were waived, which required this court to examine them all.

A great many requests were made upon the part of the defendant below, the railway company, to be given to the jury.

Some of these will be noticed separately and those that are not noticed separately will be found to be disposed of upon the principles which I shall announce as the law of the case hereafter.

The first two requests asked for by the defendant, the railway company, referred to the employment or reception of foreign cars by this railway company and their transportation over the line of the road.

If there has been any claim upon the part of the plaintiff of negligence in the defendant by reason of the fact that the car, upon which he claimed to have received his injury, was a foreign car, and did not belong to the Lake Shore Railway Company, these instructions might very properly have been given to the jury, but there was no claim of negligence or attempt to recover by reason of the fact that the car was not one of the cars of the Lake Shore Company, and, therefore, the propositions, embraced in these two requests, were in the nature of abstract propositions and not demanded by the issues in the case ; and, therefore, the court properly refused to give them.

The third request is as follows :

" If the jury shall find that the standpipe complained of, had been located as it was at the time of the accident for many years; that fifty or more freight trains, with a complement of men, passed it every day, all having like duties, and no accident or injury happened or was suffered by any; that during all this time the standpipe uniformly answered its purposes without complaint from any one, the jury may take such facts and experience and use them to rebut negligence in the use of such pipe in that location; that such use and freedom from injury would constitute a reasonable test, and that the company might continue to use it without imputation of negligence."

It is sufficient to say in regard to this request, that the jury would be misled by the last sentence : " That such use and freedom from injury would constitute a reasonable test and that the company might continue to use it without imputation of negligence." That would not relieve the company from the charge of negligence, if, in fact, the standpipe was so near the railroad track that it did not afford reasonable safety and security to the employes of the company in the performance of their duties.

The eighth request was given; the fourth, fifth, and sixth, were given by the court in its general charge, almost in the language of the requests asked.

The ninth request was given so far as the defendant below was entitled to it. The request is as follows :

" That the defendant had the right to construct its road in its own way, and had the right to locate and maintain its standpipes according to its own judgment, provided, the standpipes, so located, were open and obvious, and that its employes, including the plaintiff, knew or had the means of knowing their location; that it had the right to commit the construction and location of its standpipes to its engineer or superintendent of construction ; and this fact is not abridged by the fact that it might have been safer to its employes if the standpipe had been placed farther from the track ; nor by the fact that the jury may differ with such engineer or superintendent as to the proper location of such pipes."

So far as the right to construct its road, as referred to in this request, was the principle involved in the case, it was given in charge to the jury by the court. And so far as it states that it had the right to commit the construction and location of its standpipes to its engineer or superintendent of construction is concerned, it might well mislead the jury in the belief that if the railway company did do that, did so commit its con-

Railway Co. v. Godwin.

struction to these officers, that thereupon it would be relieved of all obligations, with reference thereto, toward its servants. In this respect the jury might well be misled by this instruction and it was properly refused. And in some other respects, in which is involved the general principles of the law, applicable to a case of this character, to be hereafter referred to, the court properly refused to give it.

The tenth instruction asked was given so far as it was good, and was refused on the general principles of law, applicable to this case; so of the eleventh request. The twelfth request, referred to the disobedience of the rules of the company upon the part of the plaintiff, and was largely pressed in the argument, especially by the counsel in the close of the case for the plaintiff in error.

In reference to this we see no rule which specially applies to this class of dangers, or of the duties that it could be claimed the plaintiff below violated, and therefore the court properly refused to give the request. So far as the rules, introduced in evidence, were concerned, bore upon the conduct of the plaintiff, they were simply in regard to the general principles of contributory negligence upon his part, or the proper and due observance of care upon his part in the discharge of his duty, and needed no special instruction of any character.

The thirteenth instruction was given. The fifteenth instruction asked for was:

"That if the jury should find from the evidence that brakemen were accustomed between stations to descend the ladder of a car to examine whether boxes were heated, at places where no obstructions were in sight or to be expected, that fact would not justify the plaintiff in so exposing himself while passing stations, when he knew he was passing such stations."

This assumes that always in passing stations the party would be in danger on the cars of the company in the discharge of his duties; and being wrongful in thus assuming this fact, of course, the court properly refused to give the request.

The sixteenth request was:

"If the jury find from the evidence that plaintiff, knowing that he was passing a station and that the train was in rapid motion, climbed down a ladder on the side of a car in the train, when he knew or might have known that he would pass structures near to the track on which the train was, such act would be such negligence that he cannot recover in this action."

That also assumes that in the doing of such act he would be guilty of negligence, which was a matter of fact for the jury, from all of the evidence, and we think was properly refused.

As to the others, which I have not referred to, running up to seventeen and eighteen, as I have said, they will be disposed of upon principle in the announcement that we make of the rule of law applicable to cases of this character, when we come to consider subsequent exceptions; and that is the claim made that the verdict was not sustained by the evidence and is contrary to law.

This presents a consideration of all the evidence and of the charge of the court in connection therewith, as it is claimed that the charge was erroneous upon principle and misled the jury in the application of the law and evidence.

Counsel in this respect make claims in reference to the law which are incorrect. Indeed, the court itself, in its charge to the jury, made

some of the same mistakes or worse. But they were in favor of the railway company and against the plaintiff, Godwin. So that so far as they are concerned no complaint could be made in that regard by the railway company.

In regard to the general principles applicable to the risks which a servant assumes when he enters into the employment of his master, and in reference to the character of the service, it is entirely immaterial what it may be, whether a railway service or what not, so far as the principle of law is concerned. Where the party is required, in accordance with the rule of law which declares that where the risks in the service are greater, the amount of care which shall constitute ordinary care is greater, so far as that principle is concerned, the nature of the service is immaterial to the case. The principle is applicable alike to all, and that is, that the master and the servant owe to each other the duty of exercising ordinary care in the discharge of their relative obligations to each other, and their duties as measured by the character and the risks embraced in the service.

And, further, it is entirely immaterial as to the character of the service and employment upon the question of what risks and dangers the servant assumes by virtue of his contract of service. So that no special attention need be given or called to the fact that this was a railway service, or the service upon the railroad, which was one of great hazard, or more hazardous than many other employments.

Now what risk or dangers did the servant assume by contract in entering the service of the railway company? Here is where the court erred somewhat in favor of the railway company, in its charge to the jury, and where counsel for the railway company now claim, erroneously, too broad a principle.

Under the law by virtue of the contract which the servant enters into, he assumes only the ordinary and usual dangers of such employment. This, *ex vi termini*, includes all other risks and dangers. It excludes all unusual or extraordinary risks or dangers to the servant, growing out of any negligence on the part of the employer which is due from him to the servant.

That was an important consideration to keep before the minds of the court and the jury in this case. It became a serious question whether it was one of the ordinary and usual dangers under his contract of service, that the plaintiff, Godwin, was exposed to in this instance.

And yet, while I say this, it may be possible that after all, in its final result, it is in some sense immaterial, the confounding of these risks and dangers and grouping them all into one class, as was done by the court below and as is so frequently done in our text books and in the reported cases. They confound these various classes of dangers and they hold that if the servant had knowledge of these extraordinary or unusual dangers, or of those to which he was subjected by reason of the negligence of the master, or by violation of duty upon the part of the master, that then they are risks and dangers that he assumes as incident to his employment.

And so it is said, and was said by the court below, that if he did not even know of these dangers, but might, in the exercise of ordinary care, have known of them, and in the exercise of such care have protected himself from injury by reason thereof, then it was a risk which he assumed in entering the employment.

I say this is confounding the distinction between those dangers and risks which he, in law, assumed by virtue of his contract and those which he assumes or which fall upon him in some other way or upon some other principle. In other words, he did not assume extraordinary or unusual risks and the railway company must invoke some other principle to defeat his recovery than that he assumed the risk of such dangers under his contract of service.

That other principle is the doctrine of contributory negligence. The servant can only be defeated from recovery for injuries received in consequence of some unusual or extraordinary risks or dangers to which the master has subjected him, by his own negligence, contributing to his injury; and he may not be dismissed summarily upon the proposition that he assumed such risks when he entered the service. It is a question of law for the court to say to the jury that he assumed such risk, and that ends it, but when you come to the question of defeating him upon these other causes of action by reason of his own negligence contributing to produce the injury, that is a question of fact that must go to the jury, and be decided by the jury under all of the evidence bearing upon that point.

The court below charged upon this proposition in a most favorable aspect for the defendant below, the railway company, and under the most unfavorable aspect toward the plaintiff below. The court said to the jury upon this general question, and I read now from the charge:

"Among the hazards and dangers properly incident to the business and assumed by the plaintiff by his contract of employment with a defendant, were the risks of personal injury arising from the location of permanent structures open and obvious, near the line of the road, the dangerous character of which he either knew or had the means of knowing. Therefore, if this standpipe was a permanent structure and its position was unchanged during the plaintiff's employment, its location, near the track, open and obvious, and the dangers resulting from such location were either actually known to plaintiff or he had the means of knowing them, and by the exercise of ordinary care might have known of them, then the risk of personal injury from this standpipe was one of the dangers properly incident to the service for which the defendant is not liable in this action."

And again: " But you should bear in mind that if he had knowledge that the standpipe was there, and of its dangerous proximity to the cars, or had what would be equivalent to knowledge, the means of knowing that it was there, and would have known it had he exercised common prudence and ordinary care, the plaintiff would have no right to recover.

" If this standpipe was of that kind and character, and its location was such that the same was open and obvious to such an extent that by the exercise of common prudence and ordinary care under the circumstances in which he was placed, the plaintiff would have no more right to recover than he would if he actually knew of its existence; for in such case had he used that degree of care and caution that ordinarily prudent men would have used and exercised who were engaged in the same hazardous business under the same circumstances, he would have known it was there, and its location and proximity to the train."

Here the court grouped all classes of dangers to which the servant might be subjected, together, and charged the jury that if he knew of

them, or if he might have known of them by the exercise of ordinary care, and might have protected himself against them, that they were risks which he assumed under his contract of service and for which he could not recover.

It is claimed that this charge is sustained by Coal and Car Co. v. Norman, 49 Ohio St. 598 [32 N. E. Rep. 857], which was a case heard simply upon demurrer to the petition. The court in that case declared it was necessary for the plaintiff to allege and show, in a case of the character then before that court, and in reference to defects in appliances or machinery, that the master had knowledge of the defect and that the servant did not.

Now, as I have said, where it is one of the usual and ordinary risks or dangers that the servant encountered in a given instance out of which grew his injury, there it would be entirely immaterial whether he knew of the danger or not, because he actually assumed, in law, and was bound to know all the usual and ordinary risks and dangers of the business which he entered into.

But when you leave that principle and go to that principle whereby, if he be injured through the negligence or violation of duty upon the part of employer, that which could alone defeat him is the fact of contributory negligence, it can only be established by all the evidence bearing upon it, and is a question of fact for the jury.

In a case of that character, the question of his knowledge and the question of his recollection of the dangers at the time, with reference to his other intelligence, his employment and the duties then incumbent upon him, with reference to all these the jury have the right to say whether or not he was guilty of contributory negligence.

Making it more special and particular, as it is said, the court declared in Coal and Car Co. v. Norman, *supra*, that when he complained of an injury, resulting from a defect of appliances or of the machinery, or, if you please, of the place of employment for the servant, the servant must allege that the master knew of the defect or danger, and that the servant did not.

While the court has so declared, we know that they have declared in addition to that, that in such a case the servant may not be defeated of recovery simply by the fact that he knew of the danger theretofore. That if he knew of it theretofore, that is, before the accident, but had good and sufficient excuse at the time of the accident for his not remembering it, he could not be said to be guilty of contributory negligence so as to defeat his recovery.

I say we know, from the cases that have gone up from this circuit, which we have decided in that form, and the Supreme Court have affirmed, that they have considered and established that doctrine also.

Whether it is to be considered in conflict with the Coal and Car Co. v. Norman, *supra*, and overruled, we are not prepared to say, and in this case we could not say it. But we refer to the fact that upon the question of contributory negligence in regard to an unusual or extraordinary danger, which the servant is subjected to, even although he may have known of the appliance and of its dangerous character, yet still, if at the time he is in the discharge of employment which would naturally and obviously take his mind off of the danger, or of the defect of the appliance, and which would induce ordinary men usually to forget, that he could be excused for forgetting and that it would not defeat his recovery.

As far as that is concerned the court below wiped it all out and gave the railway company the benefit of the proposition that if he knew of the danger he could not recover or going still farther, that if he might have known of it in the exercise of ordinary care, he still could not recover.

So far as the law of the case is concerned in reference to this, it is evident that this was not, under the evidence, one of the usual and ordinary risks of the service. The jury found so—must have found so in order to have arrived at their verdict, and we cannot say that the evidence did not justify them in so finding. If it was a case where the company were negligent, or violated any duty which they owed to the brakeman, in placing that standpipe as near the track as it was placed, then it was not one of the usual and ordinary risks of the employment or dangers, which he, the brakeman, assumed by virtue of his contract of employment; it was then one produced by the negligence of the employer, which could only be defeated, or recovery could only be defeated, by reason of the fact that the plaintiff himself was guilty of contributory negligence.

It is the duty of the railroad company to construct and maintain its track and its appurtenances and appliances in such manner, as that, by the exercise of ordinary care, it shall be made as safe as possible for its servants in the discharge of their duties to the company.

If then, under that rule, this water pipe was placed so near the track that brakeman could not discharge their duties by getting down upon side ladders upon the cars to examine boxes, with reasonable safety to themselves and in the discharge of that duty, then it was a case of neglect and violation of that duty upon the part of the master.

I say, the jury so found, must have so found in this case, under the instructions of the court, and we cannot say that they disregarded the evidence in so doing.

That being the case, the question occurs, does the evidence disclose the fact that the plaintiff was guilty of contributory negligence?

This presents itself under two aspects. And in reference to the charge of the court, we take it as the court gave it. Did plaintiff know of the existence of this standpipe, and of its dangerous proximity to the track? And herein was a line of distinction drawn by the court between what it regarded as the law and the claim of counsel for the railroad company. In other words, these instructions asked for, assumed, and counsel for the railroad company now argue that if plaintiff knew the standpipe was there, that that was sufficient to defeat his recovery, mere knowledge of the fact that the pipe was there.

The court properly directed, not only should he know that the standpipe was there, but that he should know the danger which it subjected him to; that is, that it was dangerously near the track, too near the track, for safety; and that is the established principle in all the cases; not only that he knew that the thing is there or that the appliance is there, but he must know its defect or its dangers before he can be debarred of recovery.

Now then, that he knew, the plaintiff in this case, Godwin, knew that that standpipe was there, it is impossible not to believe. It is simply impossible that he did not know it was there, running on this road and on that train from Collinwood to Erie, so long as he had done, day by day, month by month, and almost year by year, it is simply an

impossibility that he, with his train stopping every day at Painesville station, should not have known that that water pipe was there.

He says they did not water at that pipe going east, but always watered at that pipe at Painesville when they were going west, which was on the south side of the track, while this was on the north side of the track. But that he knew that standpipe was there, it is impossible I say, to believe otherwise under this evidence, and with reference to his statement made directly afterwards, after the accident, that he knew the water plug or standpipe was there.

If this were all we should be compelled to say that this verdict was contrary to the evidence, but it is not.

The remaining and important principle still is, did he know that it was dangerous to him in the performance of his work; did he know that it was too near for safety?

Under the instruction of the court, the jury have found that he did not. If he did not, then the verdict was right.

On this proposition, if the case had been tried to us on the facts, we should be inclined to say that he knew that the pipe was too close for safety. And yet it would be difficult even to come to that conclusion under the evidence, taken as it is.

It was shown by the evidence that the standpipe, the outer rim of it, was twenty-six and seven-eighths inches from the side of the car, two feet and two and seven-eighths inches. A man would have to lean outward quite a distance in order to be struck on the back by that standpipe; so that there is abundant cause for claiming, under the evidence, that Godwin did not know, although he knew the standpipe was there, that it was too near to the track for safety. Although we might, if tried to us, have found differently from the jury in this instance, yet we are not able to say that the jury clearly erred in so finding, and it brings us down to the fact that this verdict is neither contrary to the law or to the evidence.

The remaining questions arise upon some evidence claimed to have been err~neously admitted. It is claimed that the court erred in the admission of testimony of non-experts as to the appearance and suffering and condition of health of the plaintiff below and to his ability to perform work. We have examined that evidence and the question asked, and we are not prepared to say that the court erred in the matter although the evidence did go to the extreme verge of the rule. For instance on pages 167 and 168 our attention is called to this :

"Q. Now, Mr. Philbrook, during the time he worked for you, how was it, as near as you can tell to the jury, how was his condition of health and ability to work?"

That question was objected to and the objection overruled, and an exception taken. And the question itself was proper.

"A. Well, he was not able to work at all. I did not consider him a well man."

That is giving his opinion, not stating any fact ; his opinion on the general result of his idea of the man ; "I did not consider him a well man, a man fit to do a day's work, during any of the time he worked for me, or during the time I have been acquainted with him, and I have seen him for the last five years."

I said the question was proper and in proper form, part of the answer was improper, but there was no request to exclude it, and so we are compelled to pass that.

Railway Co. v. Godwin.

" Q. At these times when he did work and was with you, what was his condition as to suffering and pain?"

Again objection is made, which is overruled, and an exception taken.

And to this we say there could be no proper objection as the question was within the rule.

" A. He complained all the time of pain through his kidneys and through his back, and he looked pale. He did not look like a well man and he did not move around like a man that had any energy at all during the time that he worked for me. I could not use him on inside work nor on blinds before he would almost faint right away and have to quit. What the cause of it was, is something I don't know. "

Now part of this went beyond the line, and here again there was no asking to exclude it. So that the question, being proper, whatever of the answer was improper was not asked to be ruled out and therefore there is no exception in that, that we can notice. So there may have been in some other places in this record.

Again on page 85: " When he was at work at that, what did you observe, if anything, about his ability to labor and his strength?"

That was proper, the question was right and properly admitted to be answered. But the witness asks the question, " After he was hurt?"

" Q. Yes, after he was hurt, when he worked with you and since that time?

" A. He was sickly and complained a good deal that summer. He could not do hardly any work. He tried to hoe and he would hoe, maybe a minute or two and then have to quit, and keep on for a few hours, and then be laid up most of the day, all summer."

Now here counsel moved to have the answer excluded, but they moved to have the whole answer excluded, and part of it is competent; as to the fact that he looked pale when he tried to work and that he would try to hoe a minute or two and could not, etc., was a proper answer; that he was sickly and complained a great deal, was perhaps out of the line, and if request had been made that that part of the answer be excluded, it would have been erroneous to have refused it.

In regard to this standpipe, it came out on examination of Turner, one of the witnesses for the plaintiff and who had for many years been the agent for this company at this station, that this standpipe had been moved or removed to another place after this accident. It came out, as it were, incidentally from him, but immediately counsel for the plaintiff, who was examining him in chief, took it up and asked in regard to it, whether it had been removed since this injury had occurred. Thereupon there was an objection made and it was stated to the court in the objection that they sought to show something that had occurred six years after the accident, and the court inquired of counsel for the plaintiff below upon what principle they claimed that testimony to be competent. And thereupon, the record shows that counsel for the plaintiff stated they claimed that they had a right to show that it had been moved after the accident to another place and farther away from the track; they had measurements and would introduce measurements or testimony of measurements to show this, and that it was competent as evidence of an admission upon the part of defendant. That in its original position, when the plaintiff was injured, it was too close and known to the defendant to be too close to the track for safety; as an admission, in other words, of negligence.

And counsel stated that it did not make any difference whether it was one year or six years after the accident that it had been removed.

The court made some remarks in regard to this, which are in the record, in regard to the question of time, and referring to Ashtabula v. Bartram, 2 Circ. Dec. 372 (3 R. 640), that my colleague, Brother Frazier, has referred to in another case this morning, and in which I rendered the opinion in Ashtabula county, wherein it was held that evidence of that character, and the repair of dangerous things soon after, was admissible, referring to that as the proposition that perhaps the question of time was important, but after all he would admit it. So, with the understanding that counsel for the plaintiff claimed that they were going to show this fact by measurements, that it was removed and placed farther away from the track after the accident, and that, perhaps, was six years after the accident, the court admitted it.

Subsequently, from the same witness, it appeared that they immediately proceeded to ask him about the removal, and he states it and they ask him for measurements now, as it now stands, or as it stood at the time of the trial, May, 1893; the distance from the track as it now stands, the place where it was removed to, and he states the distance from the inside of the north rail would be fifty-nine inches.

So that they are now giving to the jury the distance, the precise distance from the track that the pipe stood as in the place it then occupied, to-wit, in May, 1893, because the witness said he had measured it that day.

Then he proceeded to show on cross-examination that perhaps it had been moved more than once. They asked him on cross-examination when it was that this pipe was removed, and he replied by question, "The last change?" They say "Yes." "Well," he says, "that occurred last fall." That would be the fall of 1892, which was five years and a half, or more, after the accident. Now, incidentally, thus it appears, from the statement of the witness or from his language, that he knew of more than one removal.

How many times it had been removed, that water plug, or pipe, during that five years and a half, did not appear, but it fairly appeared that it had been removed more than once, but the removal that the plaintiff was relying upon, and the measurements of where it then stood which he gave to the jury, was the last one, if there was more than one, and that was a removal in the fall of 1892; it was fifty-nine inches from the rail, as given by the measurements.

So they were relying upon the last removal, if there was more than one, and its distance from the track then as being greater than it was at the time the plaintiff was injured.

They undertook to subsequently show by Mr. Ward and other witnesses that he had measured the distance of the standpipe from the rail after the accident, while it still stood in its original place, and it was four feet two inches and a half from the rail. In other words, they had removed it to the distance of fifty-nine inches from the rail, where it had stood when the plaintiff was injured at forty-two and a half inches, making considerable of a difference in reference to the body of a man standing upon a step ladder on the side of a car.

Was this testimony competent as thus produced?

As we declared in Ashtabula v. Bartram, *supra*, where a defendant has changed the dangerous appliances or object immediately after

the accident, evidence of that change or repair by the defendant may be given in evidence for the purpose of tending to prove an admission on his part that he knew or thought it was dangerous as it originally stood.

That, in Ashtabula v. Bartram, was the question whether or not the street, which was on the side hill, was dangerous by reason of the absence of a barrier or fence. There had been a fence along there and a portion of it was gone. There was a water trough at the side of the road next to the hill. At this point the water had overrun; in some instances vehicles had been slid over and down the hill where the fence had been removed or had broken away; and in this instance the party's horse was frightened and shied off and went down over the hill by reason of the absence of this portion of the fence at this part. That was the claim of negligence; and they offered evidence to show that directly after the accident to the plaintiff, the village repaired the fence and built it up again.

This evidence, we held, was properly admitted for the purpose of showing an admission upon the part of the village that it was necessary to have a barrier there and that it was its duty to furnish it. But that was directly after the accident. With regard to the accident itself, it bore the relation of the cause and effect, and that of the principle, as we understand it, that authorizes this character of evidence to be given to tend to prove an admission by the act of the defendant that he knew of the dangerous condition of the thing or the place, and that it was dangerous by reason of the fact that immediately thereafter he had changed it.

The principle that allows this testimony to be given substantially is that of cause and effect; that the accident having come to the knowledge of the defendant, did produce this natural effect upon him when he knew that from that fact that it was a dangerous place, and he had to remedy it, that he immediately did remedy it; that it needed remedy, in other words. The cause informed him that the place needed remedy, the defect needed to be remedied; that there was a defect there which needed remedy.

And when, as I have said in Ashtabula v. Bartram, *supra*, we allowed it to be admitted, that class of evidence, because it was near or directly after the accident, so that the principle of cause and effect might be properly claimed to exist.

But here, five years and a half elapses between the time when the accident or the cause occurs and the effect. The accident occurred in March, 1887, and the change and removal from the track in the fall sometime of 1892, over five years and a half.

Can it be said that there is any relation between those two, that is, of the cause and effect? Was the change by the defendant so near in point of time to the accident that it could be said to have been caused or produced by the knowledge of the accident?

In this respect we think the matter was entirely defective, and that the court erred in the admission of this testimony. It was in violation of the principle which authorizes its admission, which I have already stated.

And although some of the cases, and there are cases in contradistinction in regard to this same case, hold that no testimony of that character, regardless of the time when it occurred, is admissible; but aside from this, no case can be found wherein such testimony was admitted except where it was within a reasonable time after the accident; and that reasonable time is for the court to declare, first, that the change

was made within a reasonable time thereafter before the jury are entitled to consider it or have it as a fact.

Again, upon another proposition for the purpose of showing negligence upon the part of the defendant in regard to this particular standpipe, they sought to show that it was much nearer the track than others along on the division where the plaintiff worked, from Collinwood to Erie, and they introduced a witness, Mr. Ward, to show by measurements what distance the water pipes or standpipes stood from the track at other points on this division.

And he stated that he had taken these measurements in May, 1891, four years and two months after the accident. That was the date and the measurements which were to be used as comparison and as showing where the other standpipes were four years and two months prior to that time, to-wit, the time when the plaintiff was injured.

Now this evidence was important to both parties if it were proper evidence, because it showed quite a number of similar standpipes, placed for furnishing water to the engines of the road at other stations and points between Collinwood and Erie. One of them, the one at Girard, was nearer to the track than this one at which the plaintiff was injured, and others were farther away—some of them a few inches, and some a foot or more farther away.

So that the testimony bore upon the question of the knowledge of the defendant in regard to where was a line of reasonable safety, and where they had placed the standpipes in their various localities, and it also showed in favor of the defendant, that it had no plan laid out, because they were not of uniform distance. And it also showed in favor of the defendant that one of them, at least, was nearer to the track than the one at which the plaintiff was injured or the one at Painesville.

While it is proper to give that in evidence we think the question must be as to the method of doing it; the method sought by the plaintiff and permitted by the plaintiff below, was to show those facts by measurements, taken, as I say, in May, 1891, four years and two months after the accident, without any evidence whatever to show that the standpipes thus measured and given in evidence to the jury were in the same position in March, 1887.

No evidence which in any manner tended to show it, or that they had been, like this one, removed or changed, in any manner, did not appear. The court said it was proper to be given in evidence, as tending to show where they were in March, 1887.

The question is now, simply, was that evidence too remote? Measurements were made four years and two months afterwards. Was it too remote? Was it within such a period of time as the court might properly say that it excluded the idea that they may have been removed meanwhile?

In this respect it stands precisely on the basis of the other. We think it entirely too remote, and the court should have excluded the evidence instead of admitting it. It was a proper fact to have been proved, but it should have been proved in another way; if proved in that way some evidence should have been given to show that during those four years and two months these standpipes had been removed, they stood and were in precisely the place that they occupied at the time the plaintiff was injured, so as to have afforded a fair basis of comparison of the distance which this pipe stood from the track as compared with the others.

Railway Co. v. Godwin.

That this is an important consideration is apparent at a moment's thought. In the transaction of business of a great railway, continual changes are made, not only in its tracks but in its equipments and appliances and appurtenances.

Originally it is said they are built with very little money, economically built, and built without much regard to speed or stability, by reason of the fact that they are built with a small amount of money, and that afterwards, as the company grows rich, or grows in ability to expend money upon its structures, they are increased and changed and varied, and this seems to be continually going on.

In these companies, and it is illustrated in the case here at bar, for various causes these changes may occur. Here it is shown by Mr. Turner that the reason, substantially why this standpipe was removed, was not because it was found to be too near the track for safety, as shown by the injury to the plaintiff, but because they had removed the station house at the point, they had built a new station farther east, and so they moved the appliances, not only the one on the north side, the one at which he was injured, but the one on the south side, and while they moved the north side one a little farther away from the track, they brought the south side one a little nearer the track.

I refer to this simply to show that it is important in matters of this character to have the evidence near in point of time to the act complained of or the act in question, and the evidence must not be remote from it.

And that there should be some reasonable evidence, given in a case like this, that the standpipes had remained in the same position from 1887 to 1891, when Mr. Ward measured them, at other points along the line of this road.

For the reasons just given this case must be reversed, and remanded to the court below.